DECLARATORY JUDGEMENT
MARK BUTTERFIELD, Chief Judge.
INTRODUCTION
This case concerns a challenge to the removal of President Jacob Lonetree from his office by the October 21, 2000 General Council of the Ho-Chunk Nation. Previously, this Court determined that the plaintiffs lacked standing to challenge an election for a replacement to a Legislator who is required by the HCN Constitution to step up into the position of President pro tempore. Moreover, the Court further determined that there was no harm to the plaintiffs because should they prevail on their claim there would be no third party interest blocking plaintiff Jacob Lonetree’s return to office. However, the Court also stated that based on existing case law the plaintiffs had standing to proceed with their challenge to Jacob Lonetree’s removal as president. See Jacob Lonetree et. al. v. Robert Funmaker et. al, CV 00-105 (HCN Tr. Ct. Nov. 21, 2000) Denial of Preliminary Injunction.
In the preliminary order the Court found the plaintiffs might prevail based on a reasonable reading of the language in Coalition for Fair Government II et. al v. Chloris A. Lowe, Jr., CV 96-22 & CV 96-24, 1 Am. Tribal Law 145, 162-63, 1997 WL 34676286 (HCN Tr. Ct. Jan. 3, 1997). This language concerned the authority of individuals to serve officials with Notices of Intent to Remove. In that case, the Court found that members of the General Council Planning Committee did not have either inherent or delegated authority to serve such papers. However, the Court questioned the parties at Oral Argument during the Preliminary Injunction Hearing regarding whether the language in question was dictum and without binding legal authority.[1] The Court further asked the parties to brief this issue, so that they *160 had the time and ability to directly answer this question.
The plaintiffs filed a Motion far Summary Judgment on November 15, 2000, alleging that they were entitled to judgment as a matter of law as defendant Visintin lacked authority to serve Jacob Lonetree with the Notice of Intent to Remove. As agreed upon at the November 16, 2000 Preliminary Injunction Hearing, a Brief in Support of Summary Judgment; In the Alternative Plaintiff(s) Trial Brief on November 20, 2000.[2] On November 27, 2000, the defendants filed a Defendants Brief in Response to Plaintiffs Motion for Summary Judgment and Brief Regarding the Court’s Questions. The defendants’ filing, though not captioned as a Motion for Summary Judgment, requested summary judgment as they alleged that defendant Visintin, as a member of the Ho-Chunk Nation and as a member of the General Council, has an inherent right to serve a Notice of Intent to Remove. On November 28, 2000 the plaintiffs filed a Reply Brief which argued in part against the granting of summary judgment for the defendants based upon the defendants failure to file a formal Motion for Summary Judgment.
This case presents a directly analogous fact situation where an individual tribal member not claiming to represent any official or semiofficial body may serve a Notice of Intent to Remove an official for malfeasance.
APPLICABLE LAW
HCN CONSTITUTION
ARTICLE IV—GENERAL COUNCIL
Section 1. Powers of the Gen eral Council. The People of the Ho-Chunk Nation hereby grant all inherent sovereign powers to the General Council. All eligible voters of the Ho-Chunk Nation are entitled to participate in General Council.
Section 2. Delegation of Authority. The General Council hereby authorizes the legislative branch to make laws and appropriate funds in accordance with Article V. The General Council hereby authorizes the executive branch to enforce the laws and administer funds in accordance with Article VI. The General Council hereby authorizes the judicial branch to interpret and apply the laws and Constitution of the Nation in accordance with Article VII.
Section 3. Powers Retained by the General Council.
(a) The General Council retains the power to set policy for the Nation.
(b) The General Council retains the power to review and reverse actions of the Legislature except those enumerated in Section 4 of this Article. The General Council shall return such reversals to the Legislature for reconsideration consistent with the action of the General Council. The General Council retains the power to review and reverse decisions of the Judiciary, which interpret actions of the Legislature. The General Council does not retain the power to review and reverse decisions of the Judiciary, which interpret this Constitution.
(c) The General Council retains the power to propose amendments in accordance with Article XIII, including those, which reverse decisions of the *161 Judiciary interpreting this Constitution.
(d) The General Council retains the power to establish its own procedures in accordance with this Constitution.
(e) The General Council retains the power to call a Special Election.
(f) Actions by the General Council shall be binding.
Section 4. Excepted Powers. The General Council does not retain the power to review actions relating to the hiring or firing of personnel.
Section 5. Annual Meetings. The People shall meet in General Council at least one time each year, which shall be called by the President and at other times as provided in Section 6 of this Article. Notice shall be provided by the President for all Annual Meetings of the General Council.
Section 6. Special Meetings. Special Meetings of the General Council shall be called by the President upon petition by twenty (20) percent of the eligible voters, or upon written request of a majority of the Legislature, or when deemed necessary by the President. Notice shall be provided by the President for all Special Meetings of the General Council.
Section 7. Procedures. Twenty (20) percent of the eligible voters of the Nation present in General Council shall constitute a quorum. Each action of the General Council shall require the presence of a quorum. The President shall call all Annual and Special General Council Meetings, except those meetings called pursuant to Article IX, Section 2. When a quorum is attained, the General Council shall select either the President or another person to conduct the meeting. A secretary shall be appointed to record the minutes of an General Council meetings, including any votes taken. The secretary shall transmit the minutes of General Council meetings to the Legislature.
ARTICLE IX—REMOVAL, RECALL AND VACANCIES
Section 2. General Council Removal of the President. The General Council may remove the President for malfeasance. No vote by the General Council to remove the President shall take place before such President has been given reasonable notice of the impending action and has had a reasonable opportunity to be heard.
DECISION
This phase of the case concerns the legal issue of whether or not an individual member of the Ho-Chunk Nation has the right to serve papers on an official, alleging grounds of malfeasance justifying the removal of the official at an upcoming General Council. There is no dispute as to the tacts pertaining to the serving of the Notice of Intent to Remove by defendant Visintin, that Jacob Lonetree was afforded the opportunity to respond to the allegations of malfeasance at the October 21, 2000 General Council, and that a majority of the quorum present voted in favor of the removal of Jacob Lonetree. Gloria Visintin, an individual tribal member above the voting age, served President Jacob Lonetree with a Notice of Intent to Remove on October 3, 2000. Ms. Visintin did not represent any official or semi-official body of the Ho-Chunk Nation similar to or analogous with the General Council Planning Committee [GCPC] mentioned in Coalition for Fair Government II.
The plaintiffs contend that the Notice of Intent to Remove Jacob Lonetree was prepared and served by a person without any authority. It is unknown who prepared the Notice of Intent to Remove Jacob Lon-etree actually served by Gloria Visintin on *162 October 3, 2000. The plaintiffs made no showing as to this fact. For the purposes of this opinion, the Court will assume that Ms. Visintin prepared the Notice of Intent to Remove.
In a case clearly distinguishable from the present case, Byron Thundercloud, then a member of the HCN Legislature and its Vice President served former President Chloris A. Lowe Jr. with a Notice of Intent to Remove. The removal took place when the General Council met in session on January 11, 1997 and voted to oust President Lowe. The Court distinguishes that case on the basis that Mr. Thundercloud did have the authority to serve the Notice of Intent to Remove former President Lowe as a member of the HCN Legislature, which is a body authorized to call a meeting of the General Council, including one to remove the President for malfeasance, under the HCN Constitution. See HCN Const. Art. IV. § 6; see generally Chloris A Lowe Jr. v. Ho-Chunk Nation et. al, CV 97-12 (March 21, 1997).
This is at issue because in the earlier case of Coalition for Fair Government II et. al. v. Chloris A. Lowe Jr. et. al, CV 96-22 & 96-24, 1 Am. Tribal Law 145, 1997 WL 34676286 (January 3, 1997) the Court held that members of the GCPC had no delegated or inherent authority to serve. Id. at 162. The Court further stated that the removal clause under HCN Const. Art. IX, § 1 could be utilized by having the General Council with an established quorum “authorize a body or party of delegated officials to draw up the notice of malfeasance for a later General Council, or secondly it can draw up the notice itself and set a call after a reasonable time for the Legislators to return and defend themselves against charges of malfeasance at a subsequent General Council.”[3] Id. at 163-64.
As background, it should be remembered that the GCPC never appeared and defended its actions in Coalition for Fair Government II, despite proper service. The GCPC had no office, no list of members, no phone, no post office box, no physical location and no official minutes. The group remained elusive and unaccountable even when its actions were challenged in Court. Its only known officers had either resigned or were purportedly removed by the membership. Its notices were vague, stating no grounds of malfeasance whatsoever, yet claimed to be representative of “the people.” The GCPC never served its notice on two of its three intended targets and gave the other target of removal three days notice of its intent to remove her. At the General Council itself there was a complete absence of process and only the motions for removal were heard. In fact, no charges were read.
Given this background, the Court was careful to examine the corporate or organizational authority of the GCPC. An organization is an artificial entity with no duties, rights and responsibilities except imposed from without. The GCPC had no authorization except that delegated from its creator, the Ho-Chunk Nation Legislature. It had no inherent authority and was not listed as an entity recognized under the HCN Constitution. Therefore, the Court found that it had no authority except that delegated to it. See Coalition for Fair Government II, at 163 (HCN Tr. Ct. Jan. 3, 1997). This is hardly a surprising conclusion. The decision there clearly applied to a group. However, it does not answer the question presented by the October 21, 2000 General Council, which involves the authority of a single member of the Gener *163 al Council to draw up a notice and serve it on an official with which they are dissatisfied.
The October 21, 2000 General Council was called by President Lonetree as the annual meeting of the General Council. See HCN Const. Art. IV § 5. There is no dispute that Gloria Visintin served Jacob Lonetree on October 3, 2000 with a document labeled, Notice of Intent to Remove, which listed various charges including financial mismanagement, unlawful signature of contracts, employment of unqualified relatives (nepotism), abridging the freedom of speech and press. See Exh. A (attached to Complaint). The plaintiffs assert that she, like the General Council Planning Committee, had no authority delegated from either the HCN Legislature or the General Council itself. Brief of Plaintiffs at 7.
The plaintiffs argue that the Court should not lightly set aside the holding in Coalition for Fair Government II, which required a delegation of authority for service to be proper. A closer reading of that case demonstrates that the core holding dealt squarely with the lack of meaningful notice. No charges for malfeasance were listed at all, which left the charged officials to guess at what items they were supposed to defend against. Secondly, the notices were not served properly. Although personal service of removal is required, two targets of removal got no notice and one got insufficient notice of only three days. Id. pp. 24-30.
Those words in an opinion which are not controlling are dictum. According to Black’s Law Dictionary, Obiter dictum means, “a judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (though it might be considered persuasive)—often shortened to dictum. ” Black’s Law Dictionary, p. 1100 (7th Ed.1999). Here the comments cited by the plaintiffs applied only to a situation where an artificial group that had no known powers attempted to impose its will upon the affected parties. This is not a case about a group, elusive or not. It is a case about an individual serving notice of removal. Therefore, the Court is not bound by the precedent in Coalition for Fair Government II to invalidate a removal because service was made by an unauthorized person.
Even though the Coalition for Fair Government II is not square on all four corners with this case, the Court must still determine if the logic of the dictum should control here. However, as the defendants point out the difference between a group and an individual are vitally important. A group, particularly one not mentioned in the HCN Constitution, has no particular rights. Individual members under the HCN Constitution have a panoply of rights including the right to vote, Art. VIII, § 5, the right to challenge election results, Art. VIII, § 7, the right to seek the recall of their representatives, Art IX § 6, the right to run for office, Art. V, § 7, Art. VI., § 3, Art. VII, § 8, the right to make motions at General Council, the right to be heard (freedom of speech and assembly), Art, X, § 1(a)(1) and the light to petition the government for redress of grievances. Art. X § 1(a)(1).
In addition to the. rights of members, the Court must look at how the HCN Constitution was structured. A critical examination of Art. IX, § 2 as well as its counterpart for Legislators, Aet. IX, § 1, requires that notice be given to the President or Legislator sought to be removed. In Coalition for Fair Government II, this Court found that notice had not been given, at least as to two Legislators and insufficient time had been given (coupled *164 with a defective notice) to a third. Here that is not the case. Notice was given to President Lonetree well in advance of the date of the General Council. This begs the question as to how notice is expected to be given. By necessary implication it must be given by an individual, otherwise notice could literally never be given. But which individual can give notice remains the question to be answered.
In Coalition for Fair Government II this Court stated that there were two methods of accomplishing service, first by having the General Council delegate authority to some group to draw up a notice and set the date for another General Council sometime later to give those noticed for removal an opportunity to appear and defend themselves, or second by having the Legislature delegate the same authority to someone. See Coalition for Fair Government II et. al. v. Chloris A. Lowe Jr. et. al, 1 Am. Tribal Law at 163, 1997 WL 34676286 (HCN Tr. Ct. Jan. 3, 1997).
Although this Court still favors those two approaches, it must consider that those are not the exclusive ways to give notice. While these two methods would insure the greatest amount of political cohesion and insure that the removals are only done in the most deliberate manner, the institution of the General Council predated the present Constitution and with which the Ho-Chunk membership is accustomed to despite all of its flaws. General Councils have been used in the past to remove WWBC Chairmen and Committee members. It is designed as an important institutional way to get elected and appointed officials to listen to the membership. If the Court were to find that individuals could not prepare and serve Notices of Intent to Remove as individuals, the Court would be undercutting one of most important safeguards in the political system which makes it responsive to the membership. It would also violate a member’s right pursuant to Art. X, § 1(a)(1) to petition their government for redress of grievances.
The Court also finds persuasive the argument of the defendants that the HCN ¡I. Civ. P. 5 allows an adult non-party to serve the papers of a Complaint. The importance of having an adult accomplish service is to make sure the person is of sufficient age and discretion to accomplish service if confronted with a variety of circumstances that would render service invalid. For example, an adult would be unlikely to leave papers with the neighbor or with a small child. The critical ingredient is that personal service of a Notice of Intent to Remove is the best way of accomplishing actual notice to the target of removal so that they have sufficient time to mount a meaningful defense against the charges. No one disputed that President Lonetree was actually served with the removal notice. Indeed, it appears that he argued against some of the charges in a newspaper article appearing in the Wisconsin State Journal on October 20, 2000, the day before the General Council. Nor have the plaintiffs argued that service was improper except in that Ms. Visintin was not authorized by the General Council to serve such papers.
The Court finds that a Notice of Intent to Remove from office is a petition for the redress of grievances, which Ms. Visintin had a right to serve on President Lonetree. Although it is troublesome that officials may face multiple threats of recall or removal, which distract them from attending to the duties of office, that is an unfortunate fact of holding public office in the Ho-Chunk Nation. It was designed that way. Public officials are supposed to be held to a high standard of conduct and it is for the electorate at General Council *165 to determine whether or not an ofticial has met that standard each time they vote, either in the election booth or at General Council.
Though the Court is sympathetic to Jacob Lonetree’s position that he may not have committed malfeasance as that would be defined in a Court of law, that is not for the Coui't to judge. As previously stated, the Court is here to make sure that the General Council does not step outside of its authority by insuring that procedural safeguards are followed. See Coalition for Fair Government II, CV 96-22 at 13 (HCN Tr. Ct. May 20, 1997).[4] The two most important of these in the context of this case are being given adequate and timely notice and having a reasonable opportunity to respond to the charges of malfeasance.
The Court does not accept that it should weigh in and judge matters, such as the substance of malfeasance allegations that are primarily political matters. As this Court held in Coalition for Fair Government II, so long as the allegations of malfeasance state to a reasonable tribal member some wrongful act, which meets a reasonable view of wrongful conduct, it is not for the Court to undo it. There the Court stated that even an insubstantial charge such as “lying to constituents” as vague as it appears, is still enough of a ‘wrongful act’ to pass the minimum threshold level to constitute malfeasance.[5]
This interpretation is similar to the definition of an impeachable offense under the U.S. CONSTITUTION, which is whatever the Senate finds it to be. Just recently the U.S. House of Representatives had a different interpretation of what a “high crime and misdemeanor” was than did the U.S. Senate in the impeachment trial of President William Jefferson Clinton. Here malfeasance is what the collective membership at a General Council says it is, so long as that is not completely arbitrary and capricious. Here the charges levied, while exaggerated and debatable on some points, stated at least two grounds, violation of nepotism restrictions and abridgment of freedom of press and speech that fit within this broad definition of bad conduct. Freedom of speech and of the press is one of the guarantees under the HCN Constitution, Art. X, § 1 and nepotism is defined in the Personnel Policies and Procedures Manual, p. 54.
CONCLUSION
There is no material dispute of fact as to the method, manner or person who provided service of removal papers to the President. The Court finds that it is within an individual tribal member’s right to serve papers on an official subject to removal. In this case, the prior procedural safeguards the Court required such as timeliness and specificity within the notice have *166 been met. The President was allowed to and took advantage of the opportunity to defend himself before the members of the General Council. The vote for removal was in excess of the amount required for a quorum. Therefore, the Court finds that the President was served properly with the Notice of Intent to Remove.[6]
All parties have the right to appeal a final judgement or order of the Tidal Court. If either party is dissatisfied with the decision of this Court, they may file a Notice of Appeal with the Ho-Chunk Supreme Court within thirty (30) calendar days from the date this Court renders such final judgement or order. The Notice of Appeal must show service was made upon the opposing party prior to its acceptance for filing by the Clerk of Court. The Notice of Appeal must explain the reason the party appealing believes the decision appealed from is in error. All appellate pleadings to the Ho-Chunk Supreme Court must be in conformity with the requirements set by the Ho-Chunk Supreme Court in accordance with the Ho-Chunk Nation Rules of Appellate Procedure.

. Obiter Dictum, or dicta is legally defined as, "A judicial comment made during the course of delivering a judicial opinion but one that is unnecessary to the decision in the case and therefore not precedential (though it may be *160 considered persuasive).” Black's Law Dictionary. p. 1100 (7th Ed. 1999)

. Plaintiffs’ counsel filed two microcassette tapes alleged to be a recording of the October 21, 2000 General Council with his Brief. The Court attempted to listen to the recordings, but due to their non-standard format, was unable to do so.

. The Court notes that the removal clause at issue in this case, HCN Const Art. IX, § 2 merely replaces "Legislators" with "President.”

. The powers of the General Council are strong but limited by the framework of the HCN Constitution. As the Court pointed out in the first removal case brought against Legislators there are limitations on the power of the General Council. Indeed, the Court found that the General Council of April 27, 1996 exceeded its authority to hire or fire personnel in Littlegeorge v. Lowe et. al., CV 96-21 (HCN Tr. Ct„ June 4, 1996). It must also follow the HCN Bill of Rights contained in HCN Const. Art. X § 1(a).

. Like the plaintiffs, this Court is bothered by the tendency of the General Council to dress up policy differences as "malfeasance” in order to justify the quick removal of politicians but removal is primarily a political act, which the Courts should be reluctant to second guess. Defining malfeasance is fraught with just the kind of unmanageable judicial standards for which Federal Courts created the “political question” doctrine. That is why this court adopts a low threshold standard, which allows the members at General Council to have maximum say over what constitutes malfeasance.

. The plaintiffs allege via affidavits that a number of persons present at the October 21, 2000 General Council were prevented from and/or intimidated against speaking on Jacob Lonetree's behalf. A reading of the HCN Constitution, Art. IX, § 2 demonstrates that it is Jacob Lonetree alone who is required to have an opportunity to be heard. There have been no allegations that Jacob Lonetree was not given an opportunity to be heard, nor are there any allegations that Jacob Lonetree requested any specific person to speak on his behalf. The Constitution does not require that any discussion take place after the charges are read and the official is given an opportunity to be heard.
Furthermore, the plaintiffs assert that there is no indication that a quorum was present when all issues were voted upon at the October 21, 2000 General Council. See Complaint at 3. The plaintiffs later allege that a quorum was not present when the agenda was approved. See Plaintiffs’ Brief at 14. Given that candor to the tribunal is required by the Rules of Professional Conduct that govern an attorney's practice before this Court, plaintiffs' counsel cannot assert at times that a quorum did not approve the agenda while asserting in open court that they will not dispute that a quorum was present. See Transcript of November 16, 2000 Preliminary Injunction Hearing at 9-10. Plaintiffs’ counsel asserted in open court that the only issue involved in this case is whether defendant Visintin had the authority to serve the Notice of Intent to Remove. See id. at 105.